State, use of Hartlove, *vs.* Fox & Son.

(Decided 21st June, 1894.)

STATE OF MARYLAND, use of ISABEL COLLINS HARTLOVE, Widow, FRANK H. HARTLOVE, WILLIAM HARTLOVE and CHARLES HARTLOVE, Infants, by their next friend, ISABEL COLLINS HARTLOVE *vs.* M. FOX & SON.

*Death by Wrongful Act—Liability for Sale of Horse with Glanders—Pleading.*

When by false representations a horse, affected with glanders, is sold to an innocent purchaser, the vendor knowing the disease to be imminently dangerous to human beings and likely to cause them injury, is liable for the death of one who contracts the disease while having charge of the horse for the purchaser, if such be the natural and probable consequence of coming in contact with the horse.

Glanders is not a disease so frequently taken by men as to permit the Court to take judicial notice of its character.

In an action against the fraudulent vendor of a horse affected with glanders, to recover damages for the death of a person who contracted the disease by contact with the horse, an allegation in the declaration that the disease "may easily be communicated to human beings" is not sufficient; the declaration should allege that the natural and probable consequence of contact with it by human beings was that they would contract it.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ROBINSON, C. J., BRYAN, FOWLER, PAGE, MCSHERRY, and BOYD, J.

State, use of Hartlove, *vs.* Fox & Son.

*William L. Marbury,* and *William L. Hodge,* for the appellant.

This is an action *ex delicto,* not *ex contractu.* The claim of the plaintiffs is that an injury has been inflicted by the wrong of the defendant; that any person whatever of the public at large could have sued if so injured. This injury is analogous to the injury done by a man casting a lighted bomb-shell into a crowd, not knowing nor caring who is there. The right which these plaintiffs claim is the same right which the person actually injured in such a case would undoubtedly have. The plaintiffs do not pretend that the deceased had any superior rights to the rest of the public by reason of his relationship to W. H. Hartlove, but his rights are certainly no less than those of other persons. 1 *Wait's Actions and Defenses,* 133 *et seq.* ; *Scott vs. Shepherd,* 1 *Smith's L. C.,* 210 ; *Benjamin on Sales (6th ed.),* sec. 431, &c.; *Benjamin on Sales (2d ed.),* sec. 431, *note p.*

When this contract was made between Fox & Son and Wm. H. Hartlove, was the vendor under no obligation except his obligation to the vendee? Did he not invade the rights of the public when he sent out into the community an animal which he knew was dangerous to every human being brought in communication with her—when he increased that danger by falsely misrepresenting the character of the mare's sickness? This is altogether aside from the fact that his act was a violation of the laws of this State. (Code, Art. 58, sec. 13.) There are any number of precisely analogous cases, in which this point has been decided. *Thomas vs. Winchester,* 6 *N. Y.,* 397, (2 *Selden*); *French vs. Vining,* 102 *Mass.,* 132 ; *Norton vs. Sewall,* 106 *Mass.,* 143 ; *Davidson vs. Nichols,* 11 *Allen,* 519 ; *McDonald vs. Snelling,* 14 *Allen,* 290 ; *Wellington vs. Downer Kerosene Oil Co.,* 104 *Mass.,* 64 ; *Fleet & Semple vs. Hollenkemp,* 13 *B. Monr.,* 219.

The American Courts hold that this class of cases are wrongs because they violate a duty owed to the public, and not owing to the violation of any duty imposed by contract. 1 *Wait's Actions and Defenses*, 136.

According to Mr. Benjamin, the English view is different. He places on this principle the qualification that the stranger to the contract, to recover, must show that his injury was the result of a false representation, "*made with the intent that it should be acted on by such third person.*" *Benjamin on Sales* (*6th ed.*), 380.

Mr. Benjamin only lays this down as the English doctrine. " In America," he says (page 382), " the liability in such cases is stated to arise from the duty which the law imposes upon every one to avoid acts in their nature dangerous." And the American rule is criticised in a leading English case. BRETT, M. R., in *Heaven vs. Pender*, 11 *Q. B. D.*, 514

There is very good authority that throws doubt on Mr. Benjamin's view of the law of England, if taken without qualification. That Mr. Benjamin did not intend it to be so taken seems to be shown by his citing *Longmeid vs. Holliday* (20 *L. J. Ex.*, 430), in which PARKE, B., "draws a distinction between an act of negligence imminently dangerous to the lives of others and one that is not so." But if Mr. Benjamin does wish to present this principle in its unqualified form, he is at variance with the discussion of the same subject in *Wait's Actions and Defenses*. The distinction there taken, and it seems a good one, is that *privity* of contract is required *only when there is no fraud;* that a party who makes a misrepresentation, *not fraudulent*, is responsible to no one but the persons contemplated in the contract. For, if any injury ensued to a third party in this case, it would be *damnum absque injuria*. 1 *Wait's Actions & Defenses*, 138.

The plaintiffs, therefore, have no hesitation in asking this Court to decide that a man is under duty not to expose his

fellow-men to danger, and that he can never lay this duty aside.

As a basis for this action, the plaintiffs allege the violation of a public duty—a duty which can be violated as well by a man who, by a fraudulent contract, sends out into the community an animal likely to cause the death of any man who touches it, as by a man who "casts a lighted squib into the market-place." And if there is any difference between the sale of a poisonous drug, *negligently* misrepresented, and a poisonous horse, *fraudulently* misrepresented, the difference is that the latter is a far more aggravated case.

The only question possible to raise in this case is this: Was the death of John W. Hartlove caused by the wrong of Fox & Son? Does the declaration show that this wrong was the proximate cause of this injury, as the law views proximate cause?

This question is not complicated by any element of contributory negligence, for the declaration states distinctly that the deceased used due care.

"If the original act was wrongful, and would naturally, according to the ordinary course of events, prove injurious to some other person or persons, and does actually result in injury through the intervention of other causes which are not wrongful, the injury shall be referred to the wrongful cause, passing by those which were innocent." *Cooley on Torts (2d ed.)*, 76.

"But it is equally true that no wrongdoer ought to be allowed to apportion or qualify his own wrong. * * * To entitle such party to exemption, he must show not only that the same loss *might* have happened, but that it *must* have happened if the act complained of had not been done. *Davis vs. Garrett, 6 Bing., 716* "; *Baltimore & Potomac R. R. Co. vs. Reaney, 42 Md., 137; Annapolis & Elk Ridge R. R. vs. Gantt, 39 Md., 143; Baltimore & Susquehanna R. R. Co. vs. Woodruff, 4 Md., 242.*

Does this case fall properly under this principle? The first cause which the declaration sets out as leading to the death of John W. Hartlove was the fraudulent sale by Fox & Son of an animal which, as they knew, was dangerous to every human being brought in contact with it. Now, have the remaining events set out followed naturally from this first one, or has the chain been broken by some supervening cause? *Addison on Torts* (*6th ed.*), 43 *et seq.*

The next event in the chain was that the purchaser believed the false statements of the defendants, bought the mare and carried her away. There is certainly nothing in this except the natural consequence of the first wrongful act. *Clark vs. Chambers, L. R., 3 Q. B. D.*, 327 ; *Pollock on Torts*, 33.

And the last event was that the purchaser took the horse off to be attended to for him by another person, who was killed. Is this anything unusual? *Vandenburgh vs. Truax,* 4 *Denio,* 464.

The *intention* of this fraudulent vendor is absolutely immaterial in this case. A lunatic or an infant, incapable of intention, may be liable in tort. All that is necessary to show here is that his wrongful and fraudulent act was followed, in the natural and usual course of events, by a dreadful injury, and he is responsible for this injury, no matter what his intentions were; although this act contains all the necessary elements to make the defendant responsible to the criminal law, where *intention* is essential. *Cooley on Torts* (*2d ed.*), 830 ; *Pollock on Torts,* 28-29.

*Thos. R. Clendinen,* for the appellees.

In the case of *George vs. Skivington, L. R. 5 Exch.,* 1, which was an action by the wife of a man to whom a druggist had sold a compound *for the use of his wife,* with knowledge that it was to be so used by, and for her,

and injury having resulted, for which she brought suit, PIGGOT, J., said, page 4: " The case, no doubt, would have been very different if the declaration had not alleged *that the defendant knew for whom* the compound had been intended." And, again, goes on to say: " Suppose, for example, a chemist sells to a customer a drug, without any knowledge of the purpose to which it is to be applied, which is fit for a grown person, and that drug is afterwards given by the purchaser to a child and does injury, it could never be contended that the chemist was liable." And in the same case, page 5, CLEASBY, J., said: " The real question is whether the allegations in the declaration are sufficient to raise. a duty to the plaintiff." Applying these principles to the present case, nothing has been alleged entitling the appellants to recover.

No action growing out of the contract can be sustained (by a third person), and except by parties or proxies. *Longmeid vs. Holliday, 6 Exch.,* 761. A volunteer (spectator in that case) cannot recover for an injury. *Scanlon vs. Wedger,* 156 *Mass.,* 462, 31 *N. E. Rep.,* 642.

As illustrating the distinctions in reference to losses of this character, and as showing that appellants have no claim which can be sustained against appellees, see *Mullett vs. Mason, L. R.,* 1 *C. P.* 559, 562 ; *Fisher vs. Clark,* 41 *Barb.,* 329 ; 2 *Shearm. & Redf., sec.* 633.

Assuming that defendants made false and fraudulent representations to the vendee, which, however, is not alleged, still deceased's family can have no action, because these representations were not made to deceased, nor with the *direct* intent that he should act upon them in the manner which occasioned his death. *Benjamin on Sales, (6th ed.), sec.* 431 ; *Langridge vs. Levy,* 2 *Mees. & W.,* 159; *in error,* 4 *Mees. & W.,* 337 ; *Barry vs. Croskey,* 2 *John. & Hemm.,* 1 ; *Peck vs. Gurney, L. R.* 6 *H. L.* 377, 412 ; *Hosegood vs. Bull,* 36 *L. T., N. S.* 617.

State, use of Hartlove, *vs.* Fox & Son.

This declaration does not make out a cause of action for negligence against the defendants, because it does not appear that defendants have violated a duty towards all the world, which violation was the proximate cause of the injury to the defendant. There is no duty on a vendor to see to it that an article sold by him has no concealed defects which by possibility may injure third persons voluntarily dealing with it.

Where the driver of a coach whose employers were under contract to horse it along a certain line, was injured by its breaking down, from a latent defect in its construction, it was held he could not recover against the defendants who had supplied the coach under contract with the postmaster-general. *Winterbottom vs. Wright,* 10 *Mees. & Wels.,* 109 ; *Collis vs. Selden, L. R.* 3 *C. P.,* 495 ; *Rice vs. Forsyth,* 41 *Md.,* 403.

In *Heaven vs. Pender,* 11 *Q. B. D.,* 503, Brett, M. R., laid down this principle: "Whenever one person supplies goods or machinery or the like, for the purpose of their being used by another person under such circumstances that every one of ordinary sense would, if he thought, recognize at once that unless he used ordinary care and skill with regard to the condition of the thing supplied or the mode of supplying it, there will be danger of injury to the person or property of him for whose use the thing is supplied, and who is to use it, a duty arises to use ordinary care and skill as to the condition or manner of supplying such thing." Even this principle would not cover the present case; yet the Court refused to concur in it, considering it not supported by the decisions.

The fact that the sale may have been unlawful does not increase plaintiff's rights. *Hill vs. Balls,* 2 *Hurl. & Nor.* 298-

Boyd, J., delivered the opinion of the Court.

A demurrer to the declaration filed in this case was sustained by the Superior Court of Baltimore City. Judg-

ment was entered on the demurrer and an appeal taken to this Court. It therefore becomes necessary for us to ascertain what facts are alleged as the basis of the suit—they being admitted by the demurrer to be true.

The plaintiffs allege that the defendants are dealers in horses and proprietors of a livery and sale stable, and had in their possession a mare which was "affected with a contagious and infectious disease called 'glanders,' a disease which is not only fatal to horses, but which may easily be communicated to human beings who happen to be brought into contact with horses suffering therefrom"; that the defendants well knowing that the mare was suffering from said disease, the dangerous character of the disease, and that it was dangerous to human life, in disregard of the statutes of this State relative thereto, negligently and wilfully exposed the mare for sale, and did sell her to one William H. Hartlove for the sum of $75; that said William H. Hartlove, "not knowing of the true condition of said mare, or that she had said disease, but relying upon and believing the assurance given him by the defendant, that she was suffering from nothing worse than a bad cold, paid for said mare, took her away and placed her in another stable where she could be and has in fact (been) attended to and treated by John W. Hartlove," a brother of William H. Hartlove, the husband of one of the equitable plaintiffs and the father of the others. They further allege that John W. Hartlove, "while attending to said mare and using due care, and not knowing that she had said disease, contracted the same and died."

Article 67, sec. 1 of our Code provides that "whenever the death of a person shall be caused by a wrongful act, neglect or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages in respect thereof, the person who would have been liable if death had not ensued, shall be liable to an action of

damages, notwithstanding the death of the person injured," etc.

We are therefore to determine whether, under the facts admitted by the demurrer, John W. Hartlove, if he had survived, could have recovered under this declaration.

It is said in *Benjamin on Sales, sec.* 431, that " a man may make himself liable in an *action founded on tort,* for fraud or deceit or negligence, in respect of a contract, brought by parties with whom he has not contracted, by a stranger, by any one of the public at large who may be injured by such deceit or negligence," although this state- ment is somewhat qualified in the later editions of that work.

The main difficulty consists in applying the principles applicable to such actions to the facts of the particular cases.

We will therefore examine into some of the authorities which have been brought to our attention to ascertain what the various Courts have determined, with a view of apply- ing what we deem to be the correct principles to the cir- cumstances of this case.

The case of *Thomas vs. Winchester,* 6 *N. Y.*, 397 (2 *Selden*), is one of those mainly relied on by appellants.

It has probably gone further than most of the cases, and has been somewhat criticised by some authorities. It must be conceded that the facts of that case differ in some material respects from the one we now have under consideration.

It very clearly decides, however, that the fact that the plaintiff was not a party to the contract with the defendant, but purchased the article in question from a druggist, who had bought it from another druggist, the vendee of the defendant, did not preclude a recovery. The action was founded on the negligence of the defendants, whose agent had negligently labeled a jar of what was in fact belladonna, "½ lb. dandelion," etc. By reason of this negligent label-

ing, the intermediate vendors as well as the plaintiff were led to believe that it was the extract of dandelion, which was harmless, and did not know it was belladonna, which was poisonous. The Court, on page 409, said: " In the pres- ent case the sale of the poisonous article was made to a dealer in drugs, and not to a consumer; the injury, there- fore, was not likely to fall on him, or on his vendee, who was also a dealer; but much more likely to be visited on a remote purchaser, as actually happened."

" The defendant's negligence put human life in imminent danger. * * * The defendant's duty arose out of the nature of his business, and the danger to others incident to its mismanagement."

On page 410 it is said: " In *Longmeid vs. Holliday,* 6 *Exch.,* 761, the distinction is recognized between an act of negligence *imminently dangerous* to the lives of oth- ers, and one that is not so. In the former case, the party guilty of the negligence is liable to the party injured, whether there be a contract between them or not; in the latter, the negligent party is liable only to the party with whom he contracted, and on the ground that negligence is a breach of the contract."

As the defendant was the cause of the injury to the plaintiff, without any intervening negligence of others, and it was " an act of negligence imminently dangerous to the lives of others," he was very properly held liable, al- though no fraud was proven or alleged.

In *Loop vs. Litchfield,* 42 *N. Y.,* 351, it was held that the vendor of an article of his own manufacture is not liable to one who uses the same, with the consent of the purchaser, for injuries resulting from a defect therein, un- less such article is, in its nature " imminently dangerous."

See also *Losee vs. Clute, et al.,* 51 *N. Y.,* 494.

In *Davidson vs. Nichols,* 11 *Allen,* 514, it was held, that the sale of an article, in itself harmless, and which only became dangerous by being used in combination with

some other article, without knowledge by the vendor that it was to be so used, did not make him liable to the purchaser from the original vendee for an injury sustained by him while using it in combination with the other article, notwithstanding it was different from that which was intended to be sold. The facts of that case did not disclose any duty or obligation which rested on the defendant toward the plaintiff in the sale of the article. The Court said: "We know of no duty, or principle of law by which a vendor of an article can be held liable for mistakes in the nature or quality of the article arising from his carelessness and negligence, which causes loss or injury to other persons than his immediate vendee, *when there has been no fraudulent or false representation in the sale, and the article sold was in itself harmless,* especially when the sale is made without any notice to the vendor that the article is bought for a third person," etc.

In *McDonald vs. Snelling,* 14 *Allen,* 294, the Court said: "Where a right or duty is created wholly by contract, it can only be enforced between the contracting parties. But when the defendant has violated a duty imposed on him by the common law, it seems just and reasonable that he should be held liable to every person injured, whose injury is the natural and probable consequence of the misconduct. * * * An action can be maintained only where there is shown to be, first, a misfeasance or negligence in some particular as to which there was a duty towards the party injured, or the community generally; and, secondly, where it is apparent that the harm to the person or property of another which has actually ensued, was reasonably likely to ensue from the act or omission complained of."

In *Wellington vs. Downer Kerosene Oil Co.,* 104 *Mass.,* 64, 68, the Court decided that where the defendant sold naphtha to a retail dealer to be sold by him to be used in lamps for illuminating purposes, the defendant knowing it

to be explosive and dangerous to life when so used, and that the retail dealer's purpose was to sell the same, and the latter sold it to the plaintiff without either of them knowing its dangerous qualities, he was held liable and was bound to contemplate, as a natural and probable consequence of his unlawful act, that it might explode or ignite and injure an innocent purchaser or his property, and must answer in damages for such a consequence if it should come to pass.

It was held in *Jeffrey vs. Bigelow*, 13 *Wend.*, 518, that the sale of an animal which had a contagious disease, known to the vendor but not to the vendee, was a fraud. This is approved of in *Cooley on Torts*, 481 (*1st ed.*), where it is also said that the fraud would not only be more censurable, but more clearly actionable, if that which is exposed to injury by the concealment is the health or life of human beings. See also *Wood on Nuisance, sect.* 146.

*Hill vs. Balls*, 2 *Hurl. & Norm.*, 299, is in conflict with *Jeffrey vs. Bigelow, supra,* so far as holding the concealment of the contagious disease to be a fraud, but it does not go to the extent of deciding that if in point of fact there was actual fraud or misrepresentation, the vendor would not be responsible for all consequences which naturally resulted from the fraudulent sale.

In the cases of *Langridge vs. Levy*, 2 *Mees. & Wels.*, 519 ; 4 *Mees. & Wels.*, 339, and *George vs. Skivington*, *L.R.* 5 *Exch.*, 1, the defendant sold the respective articles *for the use of the parties injured, knowing that they were to be so used by them,* and hence they present some different features from the case at bar.

Such cases as *Winterbottom vs. Wright,* 10 *Mees. & Wels.*, 109, and *Collis vs. Selden, L. R.* 3 *C. P.*, 495, are in harmony with *Loop vs. Litchfield* and *Losee vs. Clute, et al.*, above referred to. The defendants in those cases owed no duty to the plaintiffs on account of the respective contracts, and the articles sold and the work

done were not of such a character as to be necessarily dangerous to those using them or being where they were, and hence they were not bound either by contract or by any considerations of public policy or safety.

*Farrant vs. Barnes,* 11 *C.B.N.S.,* 553, is to the same effect as *Thomas vs. Winchester* and *McDonald vs. Snelling,* as it was decided upon the principle that a man who delivered an article which he knows to be dangerous or noxious to another person without notice of its nature and qualities, is liable for any injury which may likely result and which does in fact result therefrom to that person or any other who is not himself informed.

In *Heaven vs. Pender,* 11 *Q. B. D.,* 503, COTTON, L. J., in delivering the opinion of the majority of the Court and in declining to concur in all the principles enunciated by the Master of Rolls, said: "I in no way intimate any doubt as to the principle that any one who leaves a dangerous instrument, as a gun, in such way as to cause danger, or who without due warning supplies to others for use an instrument or thing which to his knowledge, from its construction or otherwise, is in such a condition as to cause danger, not necessarily incident to such an instrument or thing, is liable for injury caused to others by reason of his negligent acts." The appellee has cited *Benjamin on Sales (edition of* 1888), *Barry vs. Croskey,* 2 *John. & Hem.,* 1, and other authorities to establish the principle that a false representation made by one person to another, upon which a third person acts, and so acting was injured, does not give such third person a right of action, unless such false representation was made *with the intent* that it should be acted upon by him in the manner that occasions the injury or loss. That may be a correct doctrine as far as it goes, as established by the English Courts, but we do not understand it to be the law as settled by the Courts of this country, unless it be taken with the further qualification that if the act done

violate a duty owed to the particular person injured or to the public the defendant will be liable to a third person. We are not prepared to announce as the law of this State that a vendor can, by means of false representations as to the character and condition of the thing sold, induce his vendee to purchase it from him, thereby causing him innocently to subject a third person to the injury which naturally comes from his coming in contact with the thing purchased, and still *in all cases* excuse liability to such third person, unless the latter can establish that such false representations were made with the direct intent of their being acted on by him in the manner that occasions the injury.

We have referred to a number of cases which present various phases of such questions as may reflect upon the one before us. Without deeming it necessary to pass upon all of them, or to go to the full extent that *Thomas vs. Winchester* has gone, we are of the opinion that the authorities, and a proper regard for the protection of innocent persons, fully justify us in the conclusion that if a vendor sells any property, which he knows to be *imminently dangerous* to human beings and likely to cause them injury, to an innocent vendee who is not aware of the danger and to whom false representations have been made as an inducement to the sale, he may, under proper allegation and proof, be held responsible not only to the vendee, but to such person or persons as the vendee may in the ordinary course of events call upon to take charge of the property for him. It only remains for us to determine whether the allegations made in the declaration bring this case within the above rule.

It is true that it alleges that the defendants knew that the disease of glanders was dangerous to human life, and that it may be easily communicated to human beings who happen to be brought into contact with horses suffering therefrom. It does not, however, allege that there is any

imminent or serious danger of human beings contracting the disease. The allegation that "it may easily be communicated to human beings" is not sufficient, being too indefinite and general to bring the case within what we deem to be the correct principle applicable to such cases. The declaration should allege not only that the disease was *imminently* dangerous, or something to that effect, but that the natural or probable consequences of human beings coming into contact was that they would contract it. Glanders is not a disease so frequently taken by man as to permit the Court to take judicial notice of its character. Instances are probably very rare where they have contracted the disease. It may be true that if the disease is taken by a man his life will be in great danger, but is there great or imminent danger of his getting it by simply coming in contact with it? Is that the natural and probable result to be expected? The declaration must not leave to conjecture or implication any thing that is material.

In such cases as *Thomas vs. Winchester, supra,* the defendants were held liable for the negligent sale of poison because the probable result and natural consequence of the use of poison is the death of or injury to the person taking it, but in cases of this character it may not follow as a necessary or probable consequence, that human beings will be injured as they may come in contact with glandered animals without contracting the disease. The declaration should have presented such a case as showed that the defendant owed a duty to the deceased not to fraudulently expose him to a disease which would probably result in his injury by coming in contact with it.

But it is also defective in not stating that John W. Hartlove contracted the disease as the probable and natural consequence of his attending to the mare. If his case is a rare exception and a very unusual result from thus coming in contact with the disease, it would not do to hold the defendants responsible for his death. In such a

State, use of Hartlove, *vs.* Fox & Son.

case they could not have been held to have reasonably contemplated such a result from their conduct. It would be carrying the principle too far and beyond what we believe to be authorized by the authorities. The declaration simply alleges that John W. Hartlove while attending to said mare, and using due care, and not knowing that she had said disease, contracted the same and died. It should have alleged that he contracted the disease as the probable and natural consequence of his being brought in contact with it, or something to that effect, and it would have been proper to set out more fully John W. Hartlove's connection with the case, so as to show that he was in the employ of or had been called in by the purchaser to attend to or treat the animal. For although we think it can be gathered from the declaration that John W. Hartlove was acting for his brother, and was not a mere volunteer or intermeddler, it is not very explicit in that respect. What we have said above concerning the right of one not a party to a contract to sue has been on the assumption that the declaration does show that John W. Hartlove was attending to the mare at the instance of his brother, and for that reason we think the plaintiffs could sue the defendants, provided the circumstances were such as to justify it, and proper allegations were made, as we do not mean to decide that any third person, without his being in some way connected with the purchaser, could sue.

Being of the opinion that the declaration has not made out such a case as calls upon the defendants to plead, we think the demurrer was properly sustained, and will therefore affirm the judgment; but we will remand the case so that the plaintiffs can amend the declaration, if they see proper to do so.

*Judgment affirmed, with costs,*
*and cause remanded.*

(Decided 21st June, 1894.)