( Decided June 23rd, 1897).

---

## JOHN W. ROYSTON *vs.* ALBERT N. HORNER.

*Res Adjudicata—Consent Decree Dismissing Bill—Fraud and Duress.*

A bill was filed in 1888 to set aside certain conveyances from plaintiff to the defendant because obtained by fraud. This bill was dismissed with the consent of all the parties. The plaintiff therein was afterwards adjudged to be a lunatic and a bill was filed by him and his committee to set aside the same conveyances for the same cause. This bill did not allege that the consent decree had been obtained by fraud, and that decree was held to be a bar to the suit. Afterwards the bill in this case was filed making such allegations and also that the consent decree had been obtained by means of threats and duress. *Held*, that the decree was also a bar to the present suit, because the facts relied on by the plaintiff in this case could and should have been presented in the former.

Appeal from a decee of the Circuit Court of Baltimore City (DENNIS, J.), dismissing the bill of complaint, the Court holding that there was no fraud or duress practised in pro-

curing the decree of August 29th, 1889, for the purpose of vacating which the bill in this case was filed.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, PAGE and BOYD, JJ.

*Richard S. Culbreth*, for the appellant.

*John Prentiss Poe* and *Edgar Allan Poe*, for the appellee.

FOWLER, J., delivered the opinion of the Court.

On the sixth of April, 1888, John W. Royston filed his bill in the Circuit Court of Baltimore City against the same appellee against whom the bill in this case was filed by him and his committee. In the first bill he alleged his own imbecility and unfitness to attend to business; that he could be easily influenced; that whilst in this condition of mind he had been induced to sell to the appellee certain valuable property for an insignificant sum; that another and the appellee combined and conspired to cheat him; that they, through fraudulent statements and promises, induced him also to execute a deed to the appellee of all his contingent interests in the estates of his brothers and sisters which he would own in the event of their dying without issue. In the bill of 1888 Royston prayed that all these deeds might be set aside; that a receiver might be appointed to collect rents, &c. Answers were promptly filed by the appellee and his alleged co-conspirators, and in January, 1889, the plaintiff began to take testimony and continued at intervals until 15th July of the same year. None appears to have been taken on his behalf thereafter. The defendants took no testimony whatever. The next step taken under the bill of 1888 was a decree dated August 28, 1889, which was passed with the consent of all the parties, that the bill be dismissed. Presently, when we have occasion to consider the facts set forth in the bill in this case it will fully appear what induced or at least what is alleged to have induced the parties to take this course. The bill of 1888 having been

thus dismissed, as appears by the evidence in this case, after a settlement of the controversy, the plaintiff named in the bill, John W. Royston, was, without any notice to him, not only found to be a lunatic at that time, but it was adjudged that he had been so for twenty years, without lucid intervals and incapable of the management of his person or property.    Campbell B. Royston was appointed the committee of his person and estate.    In less than a month thereafter the bill which resulted in the appeal reported in 75 *Md.* 559 was filed.    In this last-named bill filed by the alleged lunatic and his committee, it is alleged that the various conveyances therein named, being the same mentioned in the bill of 1888, were made by said Royston when he was in an unsound condition of mind, and that the defendant Horner had within the short time he held and enjoyed the property so conveyed to him, received in rent the sum $4,315.00 or nearly three times as much as he had paid said Royston for it.    And the prayer is that the deeds be set aside because of the lunacy of Royston and that Horner may be required to account for the rents which he has received, and that a receiver may be appointed, &c.    To this bill Horner pleaded *res adjudicata* based upon the consent decree of August 28, 1889.    After a most careful and elaborate examination of the authorities and of the decree itself, we held in 75 Md. that that decree was a flat bar to the second bill, which as we have seen was the first attempt to get rid of the decree of 1889.

The bill in this case, which may be called the third of the series, and the second vain endeavor to avoid the binding force of the decree of 1889, was filed within a few months after the case in 75 Md. was decided.    In the opinion in that case it is said that there was in the bill no allegation of fraud in obtaining the decree of 1889, and that without such allegation and proof, the decree must stand.    Hence in the bill now before us, the allegation on which the appellant bases his claim to be again heard is that the decree of 1889 was obtained by means of certain threats made to the sister of Royston to have him arrested on the charge of forging

certain promissory notes.    It is to be noticed that it appears
to be conceded that Royston had signed the names of the
makers of the notes in question without authority.   Claiming
that these threats amount to fraud and imposition, the plaintiff
again asks us to set aside the decree of 1889.   But the plea
of *res adjudicata* is again interposed as it was in the former
case, and must, we think, again prevail as it did there.   When
in the former case the decree of 1889 was pleaded, the op-
portunity was presented to show what now is alleged to be
true, namely, that that decree was obtained by duress or
fraud.    The alleged facts upon which this allegation is
founded were as well known to all the parties then as now.
In the testimony of the able and distinguished counsel who,
in part representing the plaintiffs, signed the agreement con-
senting to the decree of 1889, he says :  " Miss Royston told
me that Mr. Horner had threatened to prosecute her brother
if the case was pressed ;" and Miss Royston, to whom it is
alleged the threats were made, shows very clearly in her
testimony that she was fully informed before the decree was
passed of the facts now alleged to constitute the fraud and  .
imposition in obtaining it.  She also communicated her knowl-
edge to other members of the Royston family, and, indeed,
the allegation in the bill now before us is that because these
same threats were known to them, the sister who had charge
of the litigation and all of them consented to the decree
which is now assailed.    But we repeat that if they had the
information and were aware of the facts now relied on, they
should have alleged them in the former bill or should have
relied upon them for the purpose of replying to the plea of
*res adjudicata.*    This rule was applied recently in the case
of *Wagoner* v. *Wagoner,* 76 Md. 313.   We there said : " It
will not do to say that the facts relied on in the second bill
were not alleged in the first bill, and could not therefore
have been proved in the first case, for the answer is, it was
the appellant's duty to have either alleged and proved them
in the first case, or to have shown in this case some good
reason for failing so to do."   *Henderson* v. *Henderson, 3*

Hare, 115.   And this rule extends not only to the questions of fact and of law which were decided in the former case, but also to the grounds of recovery or defence which might have been, but were not presented.   *Beloit* v. *Morgan*, 7 Wal. 622.   Now it is manifest that if in the former suit it had been alleged in the bill and proved that the decree of 1889 had been obtained by the duress or fraud now relied on, it would have been set aside.   And if no allegation to this effect was made, yet when the decree was pleaded, then was the time to demonstrate its invalidity by reason of fraud or duress or on any other ground available at that time. *Rouskulp* v. *Kershner*, 49 Md. 516.   And it cannot be, as contended by the appellant, that simply because the first bill was not in form a bill to set aside the decree for fraud, and this is such a bill, that therefore the plea of *res adjudicata* does not apply.   If this be so, ingenuity can easily destroy the efficiency and force of solemn adjudications settling the rights of contending parties.   And not only so, if such a bill as this may be filed now, it can be done at any time, for, as the appellant says, "the text-writers mention no limitation as to the time within which such an original bill may be filed."

The conclusion we have reached is in no wise in conflict with the numerous authorities cited to show that a decree obtained by duress or fraud is void and will be set aside. But having once had the opportunity to make this defence, and having failed to do so or to give any valid reasons or excuse for such failure, the rule must in this, as it has been in all similar cases, be rigidly applied.   The plea of *res adjudicata* must prevail and the decree of August 28, 1889, must stand.

We may add that this conclusion which we have arrived at upon a consideration of the pleadings is all the more satisfactory to us, because it brings us to the same conclusion reached by the learned Judge below on a full consideration of the facts—namely, that the bill must be dismissed.

*Decree affirmed with costs.*

(Decided June 23rd, 1897).