## WILLIAM G. ANDERSON *vs.* PRESTON R. ANDERSON AND OTHERS.

*Laches—Acquiescence—Estoppel.*

A testator declared in his will that he had given to his son, W., his full share of the estate and devised all of the same to other children. W. was then in possession of a farm, the title to which stood in his father's name, for which he had paid rent and for which he continued to pay rent after his father's death. He was a party to a bill for the sale of testator's real estate, and made no objection to a decree directing a sale of the farm as part of such real estate. Subsequently, he filed a petition alleging a parol gift of the farm to him by his father and that this was the advancement referred to in the will. Again, fifteen years after the testator's death, W. filed another petition claiming the proceeds arising from the sale of the farm, alleging that the same had been purchased for him and that his father's name was inserted in the deed by mistake. *Held*, that the petitioner was estopped by laches and acquiescence from seeking to enforce this claim.

Appeal from an order of the Circuit Court for Queen Anne's County (STUMP and MARTIN, JJ.), dismissing plaintiff's petition.

The cause was argued before McSHERRY, C. J., BRYAN, PAGE, ROBERTS, and BOYD, JJ.

*Edwin H. Brown* and *Philemon B. Hopper*, for the appellant.

*James P. Gorter* (with whom was *Hope H. Barroll* on the brief), for the appellees.

PAGE, J., delivered the opinion of the Court.

In 1881 William James Anderson died seized of three parcels of real estate, viz: The "Sandtown" property, the home farm whereon he lived at the time of his death, and "The Mike Smith Farm." By the first paragraph of his will he declared that having already "advanced" to his son, William J. Anderson, what he considered to be his full share of his property, he left him nothing by the will; and by the second paragraph thereof he made provision intended to apply to any other of his children to whom he should thereafter make advances. He then devised his real estate (except the "Sandtown" property, of small value, which he directed to be sold by his executors) to his wife for life or widowhood, making provision for a home with her for such of his children as should have received no advancements and remained unmarried, etc., with certain limitations over at her death, etc., the nature and effect of which were construed in the case of *Anderson v. Brown*, 84 Md. 266.

In October, 1883, Preston R. Anderson, one of the testator's sons, filed a bill for the sale of the real estate of which the deceased died seized. William G. Anderson and all the brothers and sisters were made parties. Subsequently the property was sold, and the sale was finally ratified on the 8th May, 1885.

An auditor's account was stated February 27th, 1886, in which, after allowing commissions and expenses, there appeared to be a balance in the hands of the trustees of $13,651.60. On 10th April, 1890, this account was finally ratified and the trustees were directed to hold the fund subject to the future order of Court. The trustees have since paid the fund or the investments thereof into Court, and it is now there pending the litigation.

The appellant claims the net proceeds of the sale of the "Mike Smith Farm," his contention, as appears by his pe-

tition filed 13 December, 1897, is based on the theory, that the advancement referred to in the first paragraph of his father's will, was the gift of the " Mike Smith Farm ;" that his father had bought that farm for him and had not only placed him in possession of it, but " had actually invested him with the title by having him returned as purchaser thereof and by having the deed therefor drawn to him," only " he made the mistake in describing him as William J. Anderson instead of William G. Anderson." He further alleges in his petition that his delay in setting up the claim was because the circumstances of his father's purchase had only recently and " accidently " come to light and that until then all his acts had been done in ignorance of his rights.

From the order of Court dismissing the petition this appeal was taken.

The original petition of the appellant was filed on the 24th of January, 1896, and the amended petition on the 13th of December, 1897, there having been also another amended petition filed on the 26th of January, 1897. The deed in which the alleged mistake is to be found was prepared by the draughtsman on the 5th of May, 1880, and executed on the 31st of August, following, so that nearly sixteen years have elapsed from the making of the deed, until his claim was made to a share in the final distribution of the proceeds of the sale of the farm and over seventeen before the theory of a mistake in the deed was preferred for the first time in the petition of the 13th December, 1897. In these intervals, all the parties interested have shown by their conduct an entire acquiescence in the terms of the deed, as it now appears. Let us briefly consider the facts, as shown by the proof. At the time of the making of the deed William J. Anderson was about seventy-one years of age. He had nine children, of whom the appellant was the eldest. During the period that elapsed between the purchase of the farm on the 5th of May, and his death in September following, he seems to have regarded himself as its owner, it was assessed to him as his property and he ex-

acted a contract to pay rent from the appellant, who was placed by him in possession.   But the appellant set up no claim to the title either during his father's lifetime, or for fifteen years thereafter.   On the contrary, he paid rent without protest for all the years he occupied it.   Three years after the purchase by the father, Preston R. Anderson, one of the appellant's brothers filed a bill ·for the sale of the farm, to which the appellant and the remaining brothers and sisters were parties.   The clear and distinct allegation was made in the bill that the real estate of which William J. Anderson died seised (which included the " Mike Smith Farm ") was the property of the appellant's brothers and sisters " as tenants in common of a defeasible fee with the right of survivorship," etc., according to the provisions of their father's will.   The appellant answered admitting all the matters and things set forth in the bill to be true and consenting to such decree as should be right and proper. So that in about three years after the death of his father, he is found agreeing to an allegation that the " Mike Smith Farm " belongs to other persons than himself, and consenting to a decree for a sale that necessarily would divest him of the possession and all claim of title to the property.   The property was sold under the decree of the Court on 14th June, 1884, and it then appeared that the shares coming to each of the children entitled would exceed $1,000 and then for the first time he seemed to have become dissatisfied. It does not clearly appear from his own testimony what the ground of his complaint was at that time, but from that of other persons it seems to have been that he had not received as much as the others would get, and he said he thought " the other children ought to make him up equal to them."   He consulted lawyers about the matter, but neither to them nor to any one else did he set up a claim to be entitled to the land.   In 1886, the auditor in his report ascertained that each of the children, except William, was entitled to interest on one-eighth part of the fund or on the sum of $1,706.45, the principal fund to be subject

to the order of the Court, to await a judicial construction of the will, upon questions not concerning the controversy in this case, as otherwise appears. Four years later he submitted without objection, to the final ratification of this report and also to the further order of the Court that each of the children entitled should receive interest on the one-eighth part of the principal fund. By an order passed in 1890, the Court ordered that the sum of $1,706.45, "being the amount Preston R. Anderson is entitled to, subject to the limitations annexed thereto, and on which he is absolutely entitled to the interest thereon during his life," be loaned by the trustees to the said Preston, on his securing the same by mortgage, etc., and, by another order passed in 1892, a similar disposition was made of the shares of two of the other children. No objection to this order was made by the appellant. He seems never to have done anything towards making a claim of any kind against the estate for sixteen years after the death of his father. In October, 1895, Preston Anderson and his co-devisees made application for the distribution of the principal fund. The appellant, in his answer filed January, 1896, demanded a share in the fund, not because of any rights in the " Mike Smith Farm," but because at the time the will was executed the testator was surety for the appellant and that "said suretyship was the advancement referred to in the will," and that the appellant had paid all the notes and therefore never had the advancement referred to in the will. One year later, in January, 1897, he filed an amended answer, in which he alleged that the advancement was not the suretyship, but that on the day of the purchase of the " Smith " farm, the testator stated publicly, that he had bought the farm for the appellant and delivered possession to him in the following January, the testator stating at the time, that he put the appellant in possession as owner and directed him to labor on it, as it was his property and he would fully enjoy and possess it after his death, but that during his life he would require a rental of him, which would be put back on the

farm for the petitioner's benefit, and that the gift of the aforesaid farm was the advancement referred to in the will. Eleven months later, that is, in December, 1897, he filed another amended answer, in which for the first time he charged there was a mistake in the deed and preferred his claim as owner to the proceeds of the sale of the "Smith" farm. Notwithstanding the statement in his first petition that the suretyship constituted the advancement referred to in the will, in his last petition he uses these words, "that before and since the death of Wm. J. Anderson, from words and acts of his to and towards your petitioner, he (the appellant) had become satisfied that the advancement claimed to be made, consisted in the gift to your petitioner of the "Mike Smith Farm," etc. It thus appears that for sixteen years the claim of a mistake in the deed was not set up by the appellant in any form either by act or statement, although he claims now that he was present at the drawing of the deed and heard all the conversation that occurred on that occasion. During this long period he and all others interested have treated the title as unquestionably in the father. The appellant paid rent for it while he was on it, permitted himself to be dispossessed by those representing the estate and never at any time asserted his claim of title. On the contrary he has permitted and agreed that the farm be sold on the claim of title of those adverse to him ; has not objected to legal proceedings that declared and adjudged his brothers and sisters (excluding himself) to be entitled to the proceeds of sale subject to the limitations of the will; has acquiesced in an order of Court that disposed of the income arising from the proceeds of the sale to persons other than himself; has endeavored to get a share of the fund as a compromise, by means of a statement that a suretyship of the father constituted the advancement ; has set up a claim to the farm by a parol gift ; and finally, having failed in everything else, now, when portions of the fund have been loaned out on the order of the Court and other rights have

accrued, and after remaining quiet so many years, demands the whole of the proceeds of the sale of the farm upon the theory of a mistake in the deed.

Under these circumstances we are of opinion, that, on the ground both of laches and of estoppel the complainant cannot now maintain his contention. Having been made a party to the original bill, and having appeared, answered and submitted to the decree and to the orders of the Court passed subsequently thereto, he is now estopped from setting up title in himself. He should have asserted his claim when those proceedings were pending. He cannot now contend that he was then ignorant of the facts. In the 10th paragraph of his petition he alleges that "before and since the death of his father he had become satisfied" that the advancement mentioned in the will as having been made to him, consisted in the gift of the Smith farm, and, in the testimony he has given, he states he was present at the conversation between his father and Judge Russum and heard his father tell him " to draw the deed up to " the son, as it was his farm. *Wagoner* v. *Wagoner*, 76 Md. 316; *Long* v. *Long*, 63 Md. 62, 63 ; *Royston* v. *Horner*, 86 Md. 252.

Moreover the petitioner has been guilty of gross negligence—he has slept upon his rights for over sixteen years. In the interval many changes have taken place. His brothers and sisters have grown into men and women. Some of them have married and have families. They have relied upon their rights and claims as recognized and enforced by the Court. Some of them have loaned their funds on mortgage by leave of the Court, and it is highly probable that all of them have incurred responsibilities upon the credit that the title to the fund has enabled them to enjoy. " Conscience, good faith, and reasonable diligence are always required in a Court of Equity to justify its interposition." *Noble* v. *Turner*, 79 Md. 527.

It would be inequitable, therefore, after such a lapse of time, under the circumstances of this case, to deprive

them now of the property, upon this stale claim of their brother.

The decree dismissing the petition must be affirmed.

*Decree affirmed.*

(Decided *per curiam* December 21st, 1898; the foregoing opinion being filed January 12th, 1899).