# CIRCUIT COURT OF BALTIMORE CITY.

Filed November 16, 1926.

CARL H. W. OERTEL
VS.
ETHEL F. OERTEL.

*Horton S. Smith* and *Chas A. Trageser* for complainant.

*Wm. H. Lawrence* for defendant.

FRANK, J. —

On July 18th, 1922, the defendant herein filed against the plaintiff her bill of complaint, charging cruelty of treatment and asking for a divorce a mensa et thoro, alimony and the custody of their infant child, then a little over two years of age. Testimony was duly taken in open Court and a decree was passed granting the relief prayed in the bill. From this an appeal was taken to the Court of Appeals of Maryland by the plaintiff herein and by that Court the decree of the lower Court was reversed and the opinion filed is reported in 145 Md., beginning at page 177. In the course of the opinion, Judge Offutt used the following language. "If the testimony on behalf of the complainant were the only testimony in the case, we should not hesitate to grant the relief prayed, but in a contested case such as this, the complainant necessarily assumes the burden of establishing by a preponderance of the evidence the facts relied upon to justify the relief prayed. Allen vs. Allen, 142 Md. 701; Goodhues vs. Goodhues, 90 Md. 292. And while the evidence to which we have referred, if uncontradicted, would be sufficient to gratify the requirements of the statute, requiring that the testimony of a party to a proceeding for divorce shall be corroborated, it is not sufficient to meet the burden imposed by the law upon the complainant of establishing the allegations of her bill of complaint by a preponderance of the evidence, when it is considered in connection with the testimony offered by the appellant, which contradicts it, and which, measured either by the number of the witnesses familiar with the facts who gave it, or by the character of their testimony, decidedly outweighs that offered by the complainant."

The defenses relied on by Mrs. Oertel herein are two-fold. First, that her admitted leaving of the marital home, at Eager street and Rutland avenue, was caused by the cruel treatment of her husband; and, second, that such leaving did not constitute a legal abandonment because she intended to return to that home.

First. The evidence in this case to support the charge of cruelty on the part of the husband is substantially the same as that offered in the preceding case, which was characterized by Judge Offutt in the language above set out. No other instances of cruelty are now relied upon. The question now presented is whether or not the mandate of the Court of Appeals, reversing the decree of this Court and dismissing Mrs. Oertel's bill is *res adjudicata* so as to preclude the defense of cruelty offered in this case. I find no decision of our own Court of Appeals directly upon this point. This question, however, has been considered in several other jurisdictions. 19 C. J. 178, par. 2-3. In the case of Civile vs. Civile, 22 California Appeals, 707, decided in 1913, a wife had sued her husband for a divorce because of his alleged intimacy with another woman. This charge was found by the Court to be untrue and her action was dismissed. The husband subsequently filed his complaint alleging that his wife without cause deserted and abandoned him. The wife admitted the desertion, but alleged, by way of defense, the same facts as to his alleged intimacy with another woman as she had relied on as the basis for her previous action against him. The Appellate Court held that it was error to admit any evidence in support of such facts, for the reason that there had been a former final adjudication between the parties of the issues in the previous action where the wife had alleged the same facts as constituting extreme cruelty; "the issue tendered was, therefore, *res adjudicata*, and plaintiff's objection to the evidence offered in support thereof

should have been sustained. The sole and only acts of plaintiff assigned by the defendant as a cause for her desertion of plaintiff were those alleged in her action for divorce wherein the Court found him without fault. No evidence whatever was offered tending to show any misconduct on his part subsequent to the date of March 21, 1910, at which time she filed her complaint for divorce, and, as stated, one of the grounds therefor being the alleged conduct pleaded herein as a ground for desertion and the action of the Court had therein was conclusive upon such question."

In Tillison vs. Tillison, 63 Vermont, 411, the plaintiff had alleged cruelty as a ground for divorce. After a full hearing the libel was dismissed. Thereafter her husband filed a libel for divorce against her on the ground of adultery. One of her defenses was a refusal of the husband to support and cruelty on his part. The trial court permitted her to introduce the same evidence used by her to sustain her claim for a divorce in her former libel. The Supreme Court of Vermont held that this was error. "Under her former libel she could have shown the refusal to support or any act of intolerable severity on the part of the libellant occurring at any time subsequent to her marriage to him to the date of the filing of the libel. The issues in that case were that he was not guilty of the alleged charges during the time named. The dismissal of that libel was a final judgment on the merits of the case." It was, therefore, held that the prior judgment barred the libellee from setting up the libellant's refusal to support or any act of intolerable severity on his part committed prior to the commencement of the suit.

The principles underlying these decisions are well established and have been frequently approved and applied by the Court of Appeals of this State. See e. g.

Royster vs. Horner, 86 Md. 249, 253. Hill vs. McConnell, 106 Md. 574, 576.

The authorities from other States above quoted apply them to divorce cases analogous on their facts to the pending case.

The opinion of the Court of Appeals in the first case between these parties on page 185, held that the evidence offered by Mrs. Oertel in support of her bill, if uncontradicted and uncontested, would have been sufficient to entitle her to a divorce, but that it did not meet the burden which the law casts upon her to establish the allegations of her bill by a preponderance of the evidence. On the contrary, the Court said that the volume and character of the evidence offered by Mr. Oertel decidedly outweighed that offered by her. As the evidence in this case is certainly no stronger, and possibly not so strong, as that offered by her in support of her bill in the former case, and as the acts of cruelty now relied on are the same as those passed on by the Court of Appeals, I feel that I cannot but hold that its decision in the prior case is binding upon me.

I, therefore, hold that Mrs. Oertel's act in leaving the marital home was not justified and, if it was accompanied by the intention not to return, a case of legal abandonment has been made out.

Second. This intention on her part abundantly appears from the evidence in the case. She never offered to return, because, as she stated in her testimony, she expected her husband to invite her back. She stayed away for a long period of time without making any effort to see her child. She filed a bill for partial divorce against him, as above set out, fought this case to a successful conclusion in the lower Court and attempted to uphold the decree of the lower Court in the Court of Appeals. She brought an action of trover in the Baltimore City Court against her husband, alleging the conversion of certain silver, comprising a portion of their wedding presents. These actions show unequivocally on her part her intention finally to terminate the marital relations. To offset this situation she claims, and I believe establishes, that at the time she left she was highly nervous and, indeed, almost beside herself. At that time I can readily understand that she had not formed any definite intention to abandon her husband, but I cannot conceive that the acts of bringing and contesting the cases above referred to at some considerable length of time thereafter, after consulting able and experienced counsel, can possibly be construed in any other manner than to demonstrate that at those periods of time she had definitely and finally made up her mind to abandon her husband. I have no doubt that she now sincerely desires a reconciliation,

518

and I much wish that it could be bought about, but I cannot believe that her offers to return to him, never made until after the loss of her own case in the Court of Appeals, show, as she testifies, that during the whole period after her leaving the home she intended to return to him. In order that legal abandonment may exist, it is necessary that the fact and intent should at some time concur, regardless of the circumstances as to which first arose, and both of these requisites have coexisted, as above indicated.

Klein vs. Klein, 146 Md. 27, 29.

I, therefore, hold that the case of abandonment for the statutory period is made out and, as the statutory requisites are all to be found, I shall grant the plaintiff a divorce *a vinculo matrimonii.*

Bounds vs. Bounds, 135 Md. 220, 225.

Third. The question that involves the most difficulty in this case relates to the custody of the infant child of the parties, now about seven years of age. He has been, ever since his birth, living with his father and, without recounting the history of his sickly childhood, appears now to be thriving and enjoying all of the material advantages that are necessary for his welfare. At the present time, he lives with his father and grandfather, and a housekeeper is employed during the daytime to run the household. He is with his mother on Saturdays and Sundays by a voluntary arrangement made between the parties.

While conceding the incapacity of the mother to look after the child to the best advantage while he was still quite young, this incapacity growing out of her state of health and her lack of experience and adaptability to that duty, I am convinced that she is now thoroughly capable of looking after him and that he needs the care and love of a mother. In saying this much, I do not want to be understood as in any way detracting from the love and care his father has showered upon him. Mr. Oertel has done for the child more than most fathers could do. He is nevertheless not the child's mother, and the mother, as shown by the evidence, is devotedly attached to the child and the child to her. I am satisfied that a greater measure of her love and influence should be secured for the boy in his best interests. He is now attending a public school in the

immediate proximity of his father's home. I certainly shall not disturb that arrangement during the school year. If desired by her, he should remain with his mother every Saturday night, at least for the purpose of making a trial and seeing how such an arrangement will work. During his school holidays, she should have him with her a longer period of time, and it is my present idea that, during the summer vacation, he should be with her continually for a considerable portion thereof. I do not find it advisable to make more detailed arrangements at this time. I shall continue the boy in the custody of his father, but in my decree make provision for his being with his mother in accordance with the above views. While the boy is with the mother for a continuous period of time, I shall require the father to pay a reasonable sum, probably $7.00 per week, for his support and maintenance during that time. This financial provision will be made only if Mrs. Oertel desires it. The Court will retain jurisdiction in the matter of such custody.

I shall sign a decree in accordance herewith.